UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY TODD GIEDD, <br><br> Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, COMMISSIONER OF SSA; <br> Defendant. | 4:26-CV-04029-VLD <br><br> MEMORANDUM OPINION AND ORDER |

**INTRODUCTION**

Plaintiff seeks judicial review of the Commissioner's final decision

denying his application for social security disability benefits under Title II and

Title XVI of the Social Security Act.[1]  Plaintiff filed a complaint seeking reversal

of the agency decision and remand of the matter to the Social Security

---

[1]SSI benefits are called "Title XVI" benefits, and SSD/DIB benefits are called "Title II" benefits.  Receipt of both forms of benefits is dependent upon whether the claimant is disabled.  The definition of disability is the same under both Titles.  A claimant's entitlement to SSD/DIB benefits is dependent upon their "coverage" status (calculated according to their earning history), and the amount of benefits are calculated via a formula based on their earning history. SSI benefits have no "coverage" requirements, the amount of SSI benefits is uniform and set by statute, dependent upon the claimant's financial situation, and reduced by the claimant's earnings, if any.  There are corresponding and usually identical regulations for each type of benefit.  See, e.g., 20 C.F.R. §§ 404.1520 and 416.920.  Plaintiff filed his application for both types of benefits.  His coverage status for SSD benefits expires on March 31, 2028. AR25.  So, in order to be entitled to Title II benefits, plaintiff must prove disability on or before that date.

Administration for further proceedings.  See Docket Nos. 1, 8, & 10.  The

Commissioner seeks affirmance of the agency's decision below.  See Docket

No. 9.

This appeal of the Commissioner's final decision denying benefits is

properly before the court pursuant to 42 U.S.C. § 405(g).  The parties have

consented to this magistrate judge handling this matter pursuant to 28 U.S.C.

§ 636(c).

**FACTS**

The singular issue presented by plaintiff in this appeal is whether, given

the evidence that plaintiff was unable to use his right arm, did the ALJ err in

formulating a residual functional capacity (RFC) that included unlimited

capacity for reaching and handling?  Docket No. 8 at 1.

**A.    Procedural History**

Plaintiff applied for disability benefits alleging he became disabled on

September 2, 2022.[2] AR23. He was 60 years old on this date. AR64. His

application was denied initially because plaintiff submitted no medical evidence

and did not fill out and turn in his activities of daily living questionnaire

despite being notified he needed to do so, so there was no evidence from which

to evaluate whether plaintiff was disabled.  AR64-67, 70-73 (report of Dr. John

J. Lassegard).  Plaintiff's disability application was denied again on

---

[2] It appears plaintiff may have made a previous unsuccessful application for
disability benefits in 1993, which would have been shortly after his right upper
extremity was impaired.  See AR313-14.

reconsideration for the same reasons.[3]  AR74-78, 81-85 (report of Dr. Lidia S. Siorek).  A hearing was held before an Administrative Law Judge (ALJ), who subsequently issued a decision denying benefits.  AR20-35, 40-63. Plaintiff sought review before the Appeals Council, which was denied, making the ALJ's decision the final agency action.  AR7-12, 241-43.

**B.    Medical Evidence**

**1.    Physical Assessment by Dr. Lance Lim—May 3, 2024**

Dr. Lance Lim evaluated plaintiff on May 3, 2024.  AR501-02.  He diagnosed plaintiff with chronic right upper extremity pain, right hand contracture with permanent deformity.  AR501.  He stated plaintiff's symptoms associated with this impairment were severe enough to interfere constantly with attention and concentration required to perform simple work-related tasks.  Id.  Dr. Lim indicated plaintiff's impairment would not require plaintiff to need to lie down during an 8-hour workday nor were there any medications associated with the impairment.  Id.

Dr. Lim opined the plaintiff was unlimited in his ability to walk without rest or pain and that he could sit and stand/walk 8 hours in an 8-hour workday.  Id.  Dr. Lim opined plaintiff would need 2-3 unscheduled breaks of

---

[3] By the time plaintiff's claim was denied on reconsideration, the AR indicates that four requests for medical records were sent to Regional West Medical Center and that entity responded that it had no records for plaintiff.  AR75. In addition, there are numerous blank forms for activities of daily living, medical treatment, and work history that were sent to plaintiff, but never filled out by him.  See, e.g. AR375-482.  Plaintiff did fill out a work background sheet and partially filled out a recent medical treatment questionnaire on January 21, 2025, but this was after the hearing before the ALJ.  AR484-87.

15 minutes each during an 8-hour workday.  Id.  Dr. Lim stated that plaintiff had no ability to reach, handle, finger, grasp, turn, twist, or perform fine manipulation with his right upper extremity.  Id.  Dr. Lim stated plaintiff had no impairment of his ability to reach, handle, finger, grasp, turn twist, or perform fine manipulation with his left upper extremity.  Id.  Finally, Dr. Lim stated that plaintiff's impairment was reasonably consistent with his symptoms and functional limitations reported in the evaluation.  AR502.

### 2. Horizon Health Records—May 3, 2024, & March 13, 2025

On May 3, 2024, plaintiff saw Dr. Lim for the first time to follow up after an emergency room visit about a week prior for an inflamed pancreas. AR519. Plaintiff also explained that he was applying for disability benefits and needed Dr. Lim's assistance in completing his application.  Id.

Plaintiff told Dr. Lim that he had no function of his right arm for the last 30 years.  Id.  He explained his arm was injured in an accident at home when he "went through the window."  Id.  The accident lacerated his muscles and his nerves on his right upper arm.  Id.  Since that time, he has been unable to use his right arm.  Id.  Although plaintiff's right hand was his dominant hand before the accident, he told Dr. Lim that he trained himself to be left-arm dominant after the accident.  Id.

Dr. Lim noted that plaintiff had well-healed scars to the medial side of his right arm with deformity of the muscles of the forearm, positive extension lag for about 10 degrees, and that his right hand was contracted/flexed.

4

AR519-20.  Dr. Lim wrote that "[i]t is fairly obvious that [plaintiff] has minimal or no function of his right arm.  AR521.

On March 13, 2025, plaintiff saw Certified Nurse Practitioner (CNP) Shelby Schoenfelder complaining of pain in his left shoulder that started "a couple of weeks ago."  AR516.  He also explained he would like a disability assessment.  Id.  Plaintiff stated he had an injury to his right[4] upper extremity 30 years prior when his arm went through a window and was pulled back and forth.  Id.  He has been unable to use his right dominant hand since the accident.  Id.

CNP Schoenfelder noted that plaintiff's left shoulder had pain with range of motion, but there was no swelling or redness and the left arm had 5/5 strength.  AR517.  The right[5] arm had no movement and 1/5 strength.  Id.

CNP Schoenfelder prescribed prednisone for plaintiff's left shoulder pain and discussed having a consultation with an orthopedic specialist since the pain is chronic.  AR517.  Plaintiff stated he would consider seeing an orthopedic doctor if the prednisone did not address his pain.  Id.  CNP Schoenfelder also recommended physical therapy for his left shoulder, but plaintiff declined that recommendation.  Id.

C.     **Plaintiff's Employment & Earnings History**

1.     **Earnings**

---

[4] There appears to be a typo in the record as the record states plaintiff "left" upper extremity was injured 30 years ago.  AR516.

[5] Again, the record refers to plaintiff's inert hand as his "left," rather than his "right" hand.  AR517.

The court reviews plaintiff's earning history assuming his injury occurred in 1992 (30 years before his alleged onset of disability). In 1992 through 1995, plaintiff earned between $10,988 and $26,755 annually.  AR282.  In 1996 he earned only $600 and nothing in 1997.  Id.  In 1998 and '99, he earned about $4,000.  Id. In 2000 he earned $13,546 and $18,335 in 2001. Id.  There are no earnings for the years 2002-2008.[6] AR283. In 2009 and 2010 plaintiff earned approximately $30,000 a year. Id.  In 2011 he earned $51,535. Id. Earnings for 2012 were $6,000, but increased to $36,000 in 2013.  Id. Between 2014-2022 plaintiff's earnings were between $8,572 and $22,749.  Id.  In 2023 plaintiff earned only $2,475.  Id.

### 2.    Employment

Plaintiff worked for Glen Dick in Huron, South Dakota, in an agricultural capacity in 2009-10.[7] AR287.

Plaintiff worked for Genuine Builders Inc. of Arlington, South Dakota in 2010-11. AR288.

Plaintiff worked for Morris Inc. of Fort Pierre, South Dakota, in 2012. AR289.

Plaintiff worked for Asphalt Paving & Materials Co. of Huron, South Dakota, in 2012-15 (roller operator). Id.

---

[6] It appears plaintiff was incarcerated during this time period.  AR331-32 (identifying the South Dakota State Penitentiary as plaintiff's medical care provider from January 2001 through December 2009).  The court notes this fact only to explain that the lengthy period of unemployment was not due to plaintiff's disability.

[7] Records in the AR indicating plaintiff's employers only go back to 2009.

Plaintiff worked for JD Concrete Products LLC of Mitchell, South Dakota, in 2014. AR290.

Plaintiff worked for Gary Hofer Farms, Link Snacks, Inc., and Midland Contracting, Inc. in 2015. AR291-92.

Plaintiff worked for Agtegra Cooperative, Beadle Conservation District (tractor operator), and Bowes Construction, Inc. in 2016. AR293.

Plaintiff worked for Wernerstruck, Inc. from 2016 -2020 (operator of earth mover and bulldozer). AR294.

Plaintiff worked for Desco Architectural, Inc. in 2021 (washing commercial windows). AR296.

Plaintiff worked for Halme, Inc. as a heavy equipment operator in Lake Norden, South Dakota, from April to September 2022. AR301-02, 311. The same year he worked for Alvord-Polk, Inc. AR297.

Plaintiff worked as a cook at Diary Queen in De Smet, South Dakota, from April to July 2023. AR298, 301-02, 311.

**D.  Hearing Testimony**

Plaintiff testified at the hearing before the ALJ via telephone and Vocational Expert (VE) William Braunig also testified via telephone.  AR42. Plaintiff was represented by counsel.  Id.

The ALJ acknowledged that counsel for plaintiff had made a request to keep the record open after the hearing, which the ALJ denied. AR43. The ALJ stated that plaintiff failed to cooperate at both the initial and reconsideration levels and that, therefore, no evidence was submitted and no consultative

examinations were submitted either as a result. Id. The ALJ noted that plaintiff had failed to cooperate and failed to provide evidence after multiple notices since 2023. AR44.

Counsel then stated that they had submitted the records from Dr. Lim and Horizon Health (referenced earlier in this opinion) just that morning, and the ALJ stated that those records would be accepted. Id.

Plaintiff testified he had only been to Horizon Health the two times documented in the exhibits submitted. AR45-46. When the ALJ asked plaintiff why he had not responded in 2023 to efforts to obtain information from plaintiff about his alleged disability including getting a consultative examination, plaintiff said he wasn't sure why. AR48-49.

Plaintiff testified he worked for Werner Truck Incorporated in Wolsey, South Dakota, operating an earth mover and a dozer for years. AR50-51. The job required plaintiff to use his right and left hands, and his legs. AR50. Plaintiff testified he lifted and carried 40 pounds maximum in that job, maybe 50 pounds. Id. He was able to climb two steps to get into the vehicles he operated. AR50-51.

In 2020 plaintiff moved back to his hometown and went to work for Desco[8] for about six months wiping down windows and window frames. AR51, 53. Plaintiff lifted about 40 pounds in this job when he would pick up commercial window frames and move them to a rack. AR53-54. Plaintiff

---

[8] Desco Architectural, Inc. is a window supplier with a location in De Smet, South Dakota.

testified his job "kind of ended" because he couldn't multitask and do different tasks. AR52.

Next plaintiff worked for Halme, Inc. in Lake Norden, South Dakota for about nine months operating an earth mover and a dozer.  AR55.  Halme did dirt work with heavy equipment and then installed water mains in small towns and similar jobs.  AR57.  While working for Halme plaintiff lifted and carried 20 to 30 pounds.  AR56.  The ALJ asked plaintiff if he quit his job at Halme or if he got fired.  Id.  Plaintiff responded "that crew fell apart."  Id.  When the ALJ asked him to explain, plaintiff testified his foreman developed cancer and left to get that treated, and a bunch of the other guys were from Texas, "and then next thing I know, the crew just fell apart and that ended it."  AR57.

In response to questions from his counsel, plaintiff testified that if he were offered any of his previous jobs, he would not be able to do those jobs.  Id. He stated things "just kept getting difficulter and difficulter [sic] to use my dominant side arm and then no longer to perform with it and can't do it anymore.  It's just tooken [sic] a toll on me over the years."  AR57-58.  Plaintiff has been supporting himself by living with a friend on his friend's farm.  AR58. Plaintiff has not had a record of past health care because he could not afford it. Id.  In return for staying with the friend, plaintiff vacuums, does laundry, and cleans.  AR59.  As of the date of the hearing, plaintiff testified he could lift 30 pounds with his left arm.  Id.

The VE testified that plaintiff's past work was characterized as Heavy Equipment Operator, DOT 859.683-010, medium skilled; and Cleaner, DOT

599-687.030, medium unskilled, SVP: 2.  AR60.  The ALJ then asked the VE to assume an individual who would lift and carry up to 50 pounds occasionally and 25 pounds frequently, who had no limits on using foot pedals or foot controls, who could frequently use hand controls, and who could climb ladders, ropes, and scaffolds occasionally, and could climb ramps and stairs and all other posturals.  Id.  The VE opined that a person with such functional capacity could return to either one of plaintiff's past jobs.  Id.  The VE testified there would be no transferrable skills to a light exertional job.  AR60-61.

**E.     ALJ Decision**

Applying the five-step analysis (discussed in more detail below), the ALJ found that plaintiff had not engaged in substantial gainful employment between the alleged date of onset of disability (September 2, 2022) and the date of the hearing (March 17, 2024).  AR25.  The ALJ found at step two that plaintiff had a severe impairment consisting of arthritis in his right upper extremity and right hand contracture.  AR26.  The ALJ found plaintiff's alleged left upper extremity condition was not a severe impairment because he had 5/5 strength, he declined physical therapy, and the allegation of left upper extremity pain was recent and did not meet the 12-month durational requirement.  Id.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 because the Listings required that plaintiff demonstrate he could not use either upper extremity.  Id.

10

The ALJ found at step four that plaintiff had the following RFC:

[T]he claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) with the following limitations:  no limitations on using foot pedals or foot controls; can frequently use hand controls; occasional climbing of ladders, ropes, or scaffolds; and occasional crawling.

AR26.

The ALJ noted that plaintiff testified he has no use of his right upper extremity, but the ALJ only partially credited plaintiff's testimony. He noted that plaintiff's right upper extremity injury was 30 years old, but that he nonetheless engaged in substantial gainful activity during that 30-year span and that the record did not contain evidence that plaintiff sought medical treatment during that 30-year period except for the two scant visits in 2024 and 2025 to Dr. Lim and CNP Schoenfelder.  AR27-28.  The ALJ also noted that plaintiff's employment with Halme Inc. immediately before the period of alleged disability did not end secondary to plaintiff's physical impairments. AR27.

The ALJ noted that the state agency physicians could not give any opinions about plaintiff's RFC because there was insufficient evidence to evaluate RFC due to plaintiff's failure to cooperate.  AR28.

The ALJ found Dr. Lim's opinion regarding plaintiff's RFC to be partially persuasive.  Id.  Specifically, Dr. Lim's opinions as to plaintiff's ability to walk, stand, and use his left upper extremity was supported, but Dr. Lim's opinion that plaintiff would need 2-3 unscheduled, 15-minute breaks during an eight-hour workday was not corroborated by the objective clinical findings.  Id.

11

Furthermore, the ALJ stated that Dr. Lim's opinion that plaintiff had no use of his right upper extremity was inconsistent with plaintiff's lack of medical treatment for the right arm and the fact that he performed substantial gainful activity for 30 years with the right upper extremity impairment. Id. The ALJ concluded "it is unclear the true nature of claimant's limitations regarding his right upper extremity." Id.

Finally, the ALJ concluded that plaintiff's RFC allowed him to return to his past relevant work of heavy equipment operator and cleaner. AR29. Accordingly, the ALJ found plaintiff was not disabled. Id.

## DISCUSSION

### A.    Standard of Review

When reviewing a denial of benefits, the court will uphold the Commissioner's final decision if it is supported by "substantial evidence [i]n the record as a whole." 42 U.S.C. § 405(g); Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009) (citing Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997)). "[S]ubstantial evidence [is] defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support [the Commissioner's] conclusion.' " Klug v. Weinberger, 514 F.2d 423, 425 (8th Cir. 1975) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "This review is more than a search of the record for evidence supporting the [Commissioner's] findings, and requires a scrutinizing analysis, not merely a rubber stamp of the [Commissioner's] action." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008) (internal quotations and citations omitted). Yet,

"[i]n conducting [its] limited and deferential review of the final agency determination under the substantial-evidence standard, [the court] must view the record in the light most favorable to that determination. Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).

In assessing the substantiality of the evidence, the evidence that detracts from the Commissioner's decision must be considered, along with the evidence supporting it. Minor, 574 F.3d at 627. The Commissioner's decision may not be reversed "merely because substantial evidence would have supported an opposite decision." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). "[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings," the Commissioner must be affirmed. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993) (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." Mittlestedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000) (citations omitted).

The court must also review the decision by the ALJ to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); 42 U.S.C. § 405(g). Specifically, a court must evaluate whether the ALJ applied an erroneous legal standard in the disability analysis. Erroneous interpretations of law will be reversed. Walker v. Apfel, 141 F.3d 852, 853 (8th

Cir. 1998) (citations omitted).  The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court.  Smith, 982 F.2d at 311 (finding "appropriate deference" should be given to the SSA's interpretation of the Social Security Act).

**B.     The Disability Determination and the Five-Step Procedure**

Social Security law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.[9]  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The ALJ applies a five-step procedure to decide whether an applicant is disabled.  This sequential analysis is mandatory for all SSI and SSD/DIB applications.  Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993); 20 C.F.R. § 404.1520.  The five steps are as follows:

> **Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If the applicant is engaged in substantial gainful activity, she is not disabled and the inquiry ends at this step.

---

[9] Although plaintiff has applied for both Title II and Title XVI benefits, for the sake of simplicity, the court herein cites to only the regulations applicable to Title II where the corresponding Title XVI regulation is identical.  It is understood that both Titles are applicable to plaintiff's application.  Any divergence between the regulations for either Title will be noted.

**Step Two**: Determine whether the applicant has an impairment or combination of impairments that are *severe*, i.e., whether any of the applicant's impairments or combination of impairments significantly limit her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  If there is no such impairment or combination of impairments, the applicant is not disabled and the inquiry ends at this step.  NOTE: the regulations prescribe a special procedure for analyzing mental impairments to determine whether they are severe.  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 404.1520a.  This special procedure includes completion of a Psychiatric Review Technique Form (PRTF).

**Step Three**: Determine whether any of the severe impairments identified in Step Two meets or equals a "Listing" in Appendix 1, Subpart P, Part 404.  20 C.F.R. § 404.1520(d).  If an impairment meets or equals a Listing, the applicant will be considered disabled without further inquiry.  Bartlett v. Heckler, 777 F.2d 1318, 1320 n.2 (8th Cir. 1985).  This is because the regulations recognize the "Listed" impairments are so severe that they prevent a person from pursuing any gainful work.  Heckler v. Campbell, 461 U.S. 458, 460 (1983).  If the applicant's impairment(s) are *severe* but do not meet or equal a *Listed impairment*, the ALJ must proceed to step four.  NOTE: The "special procedure" for mental impairments also applies to determine whether a severe mental impairment meets or equals a Listing.  20 C.F.R. § 1520a(c)(2).

**Step Four**: Determine whether the applicant is capable of performing past relevant work (PRW).  To make this determination, the ALJ considers the limiting effects of all the applicant's impairments, (even those that are not *severe*) to determine the applicant's residual functional capacity (RFC).  If the applicant's RFC allows him to meet the physical and mental demands of his past work, he is not disabled.  20 C.F.R. §§ 404.1520(e)-(f); 404.1545(e).  If the applicant's RFC does not allow him to meet the physical and mental demands of his past work, the ALJ must proceed to Step Five.  20 C.F.R. §§ 404.1520(f).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. To make this determination, the ALJ considers the applicant's RFC, along with his age, education, and past work experience. 20 C.F.R. § 404.1520(g).

## C.    Burden of Proof

The plaintiff bears the burden of proof at steps one through four of the five-step inquiry.  Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); Mittlestedt, 204 F.3d at 852; 20 C.F.R. § 404.1512(a).  The burden of proof shifts to the Commissioner at step five.  Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).  "This shifting of the burden of proof to the Commissioner is neither statutory nor regulatory, but instead, originates from judicial practices."  Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).  The burden shifting is "a long-standing judicial gloss on the Social Security Act."  Walker v. Bowen, 834 F.2d 635, 640 n.3 (7th Cir. 1987).  Moreover, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

## D.    Assignment of Error

Plaintiff raises the singular issue of whether the ALJ's RFC concluding plaintiff could "frequently use hand controls; occasional climbing of ladders, ropes, or scaffolds" was in error given that he has no use of his right upper extremity.  The ALJ based its conclusion that plaintiff's right arm impairment did not render him disabled in large part on the fact that plaintiff had been able to work at substantial gainful employment levels for the 30-year duration of his injury and even his last employment had not ended due to disability.

16

AR27-29.  Therefore, the court examines closely plaintiff's past demonstrated ability to work with his impairment, the RFC, and details of his past work.

The ALJ concluded plaintiff could perform medium work. Commissioner's regulations define "medium work" as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

See 20 C.F.R. § 404.1567(c). The additional exertional requirements of sedentary and light work include, in addition to the above, "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." See 20 C.F.R. § 404.1567(a) & (b).

The Dictionary of Occupational Titles defines Heavy Equipment Operator DOT 859-683-010 as follows:

> Operator operates several types of power construction equipment, such as compressors, pumps, hoists, derricks, cranes, shovels, tractors, scrapers, or motor graders, to excavate, move, and grade earth, erect structural and reinforcing steel, and pour concrete or other hard surface paving materials: Turns valves to control air and water output of compressors and pumps.  Adjusts handwheels and depresses pedals to drive machines and control attachments, such as blades, buckets, scrapers, and swing booms.  Repairs and maintains equipment.  May operate machinery on sales lot or customer's property to demonstrate saleable features of construction equipment and be designated Demonstrator, Construction Equipment (wholesale tr.). GOE: 05.11.01 STRENGTH: M GED: R3 M1 L2 SVP: 6 DLU: 82.

See https://occupationalinfo.org/85/859683010.html. (last checked July 16, 2026).

The Dictionary of Occupational Titles defines Washer/Cleaner DOT 599-687-030 as follows:

> Washes metal, glass, rubber, or plastic objects:  Sprays objects with sprayer nozzle or immerses objects in washing and rinsing solutions to remove debris, manually or using baskets or conveyor. Dries objects, using cloth, airhose, or drying oven.  May manually dislodge debris from objects, using brush or hand held power scrubber.  May fill vats with water to specified level.  May pour specified quantity of soap or chemicals into water or other solutions.  May be designated according to object washed as Brush Washer (textile); Tub Washer (textile); Ware Washer (pattery & porc.). GOE: 06.04.39 STRENGTH: M GED: R2 M1 L1 SVP: 2 DLU: 88.

See https://occupationalinfo.org/59/599687030.html. (last checked July 16, 2026).

The middle three digits of each of the DOT codes reference above describe the worker function ratings of the tasks performed in the described occupation. The numbers are broken down into three separate groups:  functions regarding data (fourth digit), people (fifth digit), and things (sixth digit).

For both of the above jobs, the function in relation to data is "6" which the DOT defines as "comparing."  For both of the above jobs, the function in relation to people is "8" which the DOT defines as "taking instructions—helping." The third digit describing the function related to things for heavy equipment operator is "3" which the DOT defines as "driving-operating."  The third digit for washer/cleaner is "7" which the DOT defines as handling.  See https://occupationalinfo.org/front_223.html. (last checked July 16, 2026).

The "trailer" references--GOE, Strength, GED, SVP, and DLU--are also defined by the DOT.  GOE stands for guide for occupational exploration and is intended to assist youths and other job seekers with matching their own interests and skills with congruent jobs.  The "strength" indicates the

18

exertional level of the job from sedentary to light, medium, heavy, and very heavy and are generally similar to the Commissioner's definitions. GED stands for General Educational Development and describes the education needed in reasoning development, mathematical development, and language development. SVP refers to specific vocational preparation and indicates the amount of time typically required for a worker to learn the job. And DLU indicates the last year the DOT updated its description of a job. See https://occupationalinfo.org/appendxc_1.html. (last checked July 16, 2026).

Although the ALJ's RFC stated plaintiff could climb ropes (AR26), the above descriptions of plaintiff's past work do not involve climbing any ropes, so the court sets aside that part of the RFC. If it is in error, it is harmless error.

Plaintiff himself testified that he operated heavy machinery and lifted 50 to 40 pounds occasionally in these jobs, including his last job at Halme which was performed immediately prior to the period of alleged disability. Little discussion was had about how plaintiff used his right upper extremity—if at all—in operating the levers and pedals pertaining to heavy equipment. But plaintiff regularly earned $30,000 to $50,000 doing so in the 30 years since he acquired the impairment. Therefore, it is apparent that he could actually perform these jobs. It is equally apparent that he performed these jobs despite his impairment.

Likewise, plaintiff himself testified that in the washer/cleaner job at Desco he was able to lift 40-pound commercial windows with his left upper

19

extremity and deposit those windows in a rack.  Again, it is apparent that plaintiff can actually perform the job of washer/cleaner despite his impairment.

Defendant asserts that, in determining whether plaintiff could return to his past relevant work, the ALJ was entitled to consider the way plaintiff actually performed that work in the past, or the way such work is generally performed in the national economy.  Docket No. 9 at 5 (citing 20 C.F.R. § 404.1560(b)(2); SSR 82-61).  SSR 82-61 states that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job *as he or she actually performed it*, the claimant should be found to be 'not disabled.' " SSR 82-61, 1982 WL 31387 at *1-2 (emphasis added).

The record shows that plaintiff actually performed the jobs of heavy equipment operator and washer/cleaner despite his right upper extremity impairment. There is no evidence that his right upper extremity impairment worsened during the period of alleged disability.  Indeed, in a post-hearing document submitted by plaintiff, he indicated that he again worked in heavy equipment operating from April 1, 2024, through August 20, 2024.  AR484.

The photos of plaintiff's right upper extremity show the muscles of his forearm are atrophied, but the biceps, triceps, deltoid, and pectoral muscles of the upper right extremity appear well-developed. AR522.  These photos also support the ALJ's conclusion that, while plaintiff cannot perform fine motor manipulation with his right hand, his right upper extremity appears to be used and useful to plaintiff to some degree.  The directive of SSR 82-61 is applicable

20

to the evidence in this case—however he managed it, plaintiff *was* able to perform his past jobs despite his impairment. The ALJ was not in error to rely on plaintiff's work history in its decision.

Relying on SSR 16-3P, plaintiff argues the ALJ should not have discounted plaintiff's statements about the functional limitations of his impairment due to lack of treatment records because the plaintiff's condition may have plateaued, making further treatment unnecessary. Docket No. 10 at 3 (citing SSR 16-3P at *9).

SSR 16-3p is a Social Security Ruling providing guidance for evaluating a claimant's complaints of symptoms and functional limitations. The Commissioner does instruct that a claimant's lack of treatment must be evaluated by considering several factors, one of which is whether the impairment has reached a plateau or there is no further effective treatment available for the impairment. SSR 16-3p at *9. There may have been no further treatment for plaintiff's right upper extremity once the initial wounds healed 30 years ago. But the court reads the ALJ's opinion to rest primarily on plaintiff's demonstrated ability to work despite his impairment. The ALJ's reliance on lack of treatment was stated, but it was not the focus of the decision. To the extent this was error, it was harmless, although the court notes that there is no evidence in the record that plaintiff's condition had "plateaued" and that there was no further treatment he could have availed himself of.

Moreover, SSR 16-3p also instructs the ALJ to consider whether and the extent to which a claimant's impairments affect his or her ability to perform work-related activities.  Id. at *3.  Here, the plaintiff's ability to work for 30 years despite his impairment was the most significant factor the ALJ relied upon to conclude plaintiff was not disabled.  AR27-29. That was in accordance with, not contrary to, the guidance provided in SSR 16-3p.

Reviewing the entire record in this matter, the court concludes that the ALJ's decision is supported by substantial evidence.  The court therefore concludes that decision should be affirmed.

## CONCLUSION

Based on the foregoing law, administrative record, and analysis, it is hereby:

ORDERED that the decision of the Social Security Administration denying disability benefits to plaintiff in this matter is affirmed.

DATED this 16th day of July, 2026.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge

22